## Hamilton et al. v. Lemoyne Borough et al.

*Irwin & Bietsch*, for plaintiffs.

*Addison M. Bowman, Jr.*, and *Joseph L. Kramer*, for defendants.

SHUGHART, P. J., October 31, 1950.—Plaintiffs above named have filed an appeal in the nature of a complaint against the legality of Ordinance No. 219 of the Borough of Lemoyne pursuant to the provisions of section 23 of the Borough Code of May 18, 1933, P. L. 818, sec. 1, as amended by the Act of July 10, 1947, P. L. 1621, sec. 23, also sec. 1010, 53 PS §12900.

By agreement of counsel filed the pertinent facts hereafter referred to, relating to the controversy, have been stipulated.

The ordinance in question was passed August 4, 1949, and duly advertised August 8, 1949. By the ordinance a building or set-back line was established within the borough on the north side of Market Street extending from Eighth Street on the east to the western borough line. The line established is 50 feet back from the center line of Market Street. Plaintiffs are the owners of a lot of ground affected by the ordinance and on July 16, 1949, had filed with the borough an application for a building permit to authorize the construction of a show room on the premises the front of which was to be 34.25 feet from the center line of Market Street. From the agreement or stipulation of counsel filed it appears that the permit was not issued because of the approval of the ordinance in question.

Ordinance No. 204 of the Borough of Lemoyne, known as the Lemoyne Zoning Ordinance, had previously been passed in 1947 and is presently effective. This ordinance however imposes no building or set-back lines on any of the streets in the borough. On October 6, 1949, another ordinance was approved which provided for a set-back line on the South side of Market Street extending from the western borough line eastward to State Street and on the north side of Market Street from State Street westward to Eighth Street. This set-back line was likewise fixed at 50 feet from the center line of Market Street. State Street intersects Market Street three blocks eastward from the intersection of Eighth and Market Streets. By the two ordinances a 50-foot building line has therefore been established from the intersection of State and Market Streets on the east along both sides of Market Street to the borough line on the west.

The borough admits that there was no advertisement of an intention to consider Ordinance No. 219 prior to its adoption. Plaintiffs assign this omission as one of

the reasons in support of their contention that the ordinance is invalid.

Article XXXIII of the Borough Code, as amended in 1947, is entitled Zoning. Section 3301 (53 PS §15211.1) thereunder empowers boroughs to enact zoning ordinances regulating and restricting the "height, number of stories and size of buildings . . .", etc., and also to "establish and maintain building lines and set back building lines upon any or all public streets". Section 3304 (53 PS §15211.4) provides that prior to the presentation of such zoning ordinance notice of the intention to consider the measure shall be given by advertisement at least one week and not more than three weeks prior to the presentation thereof. Plaintiffs contend that the present ordinance was enacted pursuant to the provisions of the foregoing section of the Borough Code.

Counsel for the borough contend that the ordinance in question was authorized by the general powers conferred upon boroughs and therefore the provisions relative to advertisement of an intention to consider are inapplicable.

Article XII of the Borough Code, as amended by the Act of July 10, 1947, P. L. 1621 (secs. 1201-02), is entitled Corporate Powers. Under this article section 40 (sec. 1201) of the act provides in part as follows: "The powers of the borough shall be vested in the corporate officers. They shall have power": 53 PS §13312. The section continues to confer certain enumerated powers. One of these powers is provided for as follows: "By suitable ordinance to establish and maintain uniform building lines upon any or all streets of said boroughs": 53 PS §13337.

Article XII does not contain any specific provisions relative to advertisement of ordinances passed pursuant to the provisions thereunder. The advertisement required is therefore governed by section 1006 of the

code as amended, 53 PS §12896, which provides inter alia as follows:

"It shall be the duty of the borough council . . . "Except where otherwise in this act provided, to publish, every ordinance or resolution of a legislative character once in one newspaper of general circulation in the borough."

The ordinance in question was advertised on August 8, 1949. There is no allegation that that advertisement failed to meet the requirements of section 1006.

The question for consideration is whether authority to enact ordinance no. 219 was conferred by sections 1201-02 of the code, supra.

The exact provisions set forth under article XXXIII of the act appear for the first time in the code by virtue of the amendment by the Act of 1947 although some provisions relative to zoning were contained in the earlier Act of June 29, 1923, P. L. 957, 53 PS §15731. The latter act was repealed insofar as it relates to boroughs by section 95 (sec. 3501) of the Act of 1947, 53 PS §15281.

The provisions of sections 1201-02, as contained in the amended Act of 1947, are substantially a reënactment of the provisions of sections 1201-02 of the Code of 1927. The Act of May 4, 1927, P. L. 519, sec. 1202, provided that the borough was empowered: "By suitable ordinance to establish and maintain uniform building lines upon any or all *public* streets, *roads, highways, lanes, and alleys,* of said boroughs *and townships.*" (Italics supplied.) By the amendment of 1947 the words in italics were simply deleted.

That the above provision of the Act of 1927 empowered boroughs to enact ordinances establishing building or set-back lines was recognized if not decided in opinions filed in this court by our learned predecessor Judge Reese. See appeal of Chertcoff et al., 1 Lebanon 71, Appeal of Susquehanna Co., Q. S. Court

of Cumb. Co., April 25, 1941, no. 1568. Indeed a decision to the contrary would have rendered the provision meaningless, ineffectual, and contrary to the provisions of the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS §551. The Act of 1927 contained no provision for advertisement of an intention to consider an ordinance establishing set-back lines such as was provided by the Act of June 29, 1923, P. L. 957 (53 PS §15731) concerning zoning, subsequently repealed, see supra. We must consider that the legislature was familiar with the provisions of the Act of 1927 and since they used substantially the same language in the amendment of 1947 they intended it to be construed in the same way. Buhl's Estate, 300 Pa. 29.

It thus appears that prior to the Act of 1947 ordinances fixing set-back or building lines could be enacted without prior advertisement of an intention to consider such measure. That being so we turn to consider a possible change in such authority by the amendment to the code in 1947.

Section 51, supra, of the Statutory Construction Act, provides that the object of all construction of laws is to "ascertain and effectuate the intention of the Legislature". The very next sentences provide:

"Every law shall be construed, if possible, to give effect to *all its provisions*. When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." (Italics supplied.)

The construction urged upon us by plaintiffs' counsel would clearly render the provisions of article XII of the code conferring a general power to establish set-back lines completely ineffective and require that such authority be only exercised by conforming to the requirements set forth in article XXXIII.

To us the act is in no wise ambiguous; under article XII a borough may establish building or set-back lines by an ordinance enacted in the same manner as other ordinances are enacted. If however such lines are provided for as part of an ordinance containing other provisions relative to zoning, then it is empowered only by article XXXIII and the provisions of that article relative to prior advertisement must be followed.

Since no ambiguity or conflict exists we regard the provisions of section 63 of the Statutory Construction Act relative to general and special provisions of a statute (46 PS §563) referred to by plaintiff's counsel, as inapplicable to the situation.

Plaintiff's counsel further contend that the ordinance is invalid because an unauthorized exercise of the police power in that it is unreasonable, confiscatory, discriminatory, nonuniform, and bears no reasonable relation to health, safety and morals.

In the case of Scholl v. Yeadon Borough et al., 148 Pa. Superior Ct. 601, 604, Judge Hirt said:

"Set-back ordinances generally have received judicial sanction as lawful exercise of the police power, where the restriction has a substantial bearing on the health, safety, morals or general welfare of the public. . . . The question whether an ordinance controls the owner's use of property for the public good is 'largely legislative, with which courts only interfere to prevent an arbitrary abuse of power.' Kerr's Appeal, 294 Pa. 246, 144 A. 81. Within these limitations legislative determination as to what is a proper exercise of the police power is subject to the supervision of the courts."

From the stipulation filed it appears that plaintiffs lot is the only lot on the north side of Market Street between Eighth and Ninth Streets that is not bound by a deed restriction imposing a 50-foot set-back line. Counsel point to this fact and the fact that Ordinance No. 219 was passed after plaintiffs had made applica-

tion for a building permit as forcing a conclusion that the ordinance was aimed solely and specifically at plaintiffs.

This argument amounts to an attack on the motives of council behind the enactment of the ordinance. It has been stated that the motives of a lawmaking body are not subject to examination or question: Borough of Freeport v. Marks, 59 Pa. 253; Pottsville Borough v. Pottsville Gas Co., 39 Pa. Superior Ct. 1; Soon Hing v. Crowley, 113 U. S. 703, 710; 32 A. L. R. 1521, and cases therein cited.

"Courts are not concerned with the motives which actuate members of a legislative body in enacting a law, but with the results of their action. Their bad motives might inspire a law which appeared on its face, and proved, valid and beneficial, while a bad and invalid law might become, and sometimes is, passed with good intent and the best of motives. Hence it is well settled that evidence aliunde is inadmissable to assail the motive which induced the enactment of an ordinance for the purpose of determining its validity": 37 Am. Jur. 820.

As to the presence of the deed restriction such restriction covers only the properties (exclusive of plaintiffs') between Eighth and Ninth Streets, whereas the ordinance establishes a 50-foot set-back line from Eighth Street to the borough limits. The ordinance itself does not indicate the number of blocks concerned by it but from the map of the borough contained in the zoning ordinance attached to the stipulation it appears that the western borough line is some substantial distance west of Ninth Street. The ordinance therefore affects property other than that of plaintiffs and cannot be solely aimed at them.

Our courts have accepted the rule that a property right arises where, after a permit is granted a landowner begins construction and incurs liability for fu-

ture work: Herskovits et ux. v. Irwin et al., 299 Pa. 155. See also Appeal of Susquehanna Company, supra, and cases therein cited. When such circumstances arise a property owner's rights cannot be affected by an ordinance subsequently enacted. In the instant case no permit was ever issued, therefore no vested rights were acquired by plaintiffs. Therefore the ordinance in question cannot be considered inapplicable or invalid as to these plaintiffs because it was enacted after an application for a permit was filed.

In White's Appeal, 287 Pa. 259, speaking on the matter of zoning ordinances generally, Justice, later Chief Justice Kephart, speaking for the court at page 266, said:

"There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. The exercise must have a substantial relation to the public good within the spheres held proper."

The ordinance under consideration in that case provided for varying building lines from block to block. It was held invalid. Justice Kephart further said, at page 268:

"The application and consequence of this ordinance is a gross discrimination in that it does not bear alike on all persons living within the same territory. Regulations which do not operate on all alike cannot be justified under the police power. Here it affects property differently on adjoining blocks, *or within the same block or on opposite sides of the street.*" (Italics supplied.)

In this case the ordinance fell because it provided for *different* set-back lines on opposite sides of the street, a fortiorari, ordinance no. 219, which regulates build-

ing on the one side of the street only, cannot be sustained.

In Scholl v. Yeadon Borough, supra, in holding the ordinance invalid Judge Hirt, speaking for the court at page 606, said:

"Here the ordinance dealt with two separated blocks in the business section of the borough leaving the owners of land, fronting on Church Lane in the two intervening blocks, free to build upon their land as they chose. The ordinance within itself, lacks uniformity in its operation and is inconsistent and discriminatory."

It appears to us that the principles of this decision are also controlling in the instant case. If an ordinance fixing set-back lines in separated blocks is invalid, clearly one which attempts to regulate one side of a street alone cannot be sustained.

Although ordinance no. 219 considered alone is invalid, counsel for the borough earnestly contend that it should be considered together with the ordinance subsequently enacted, and when the two are considered together the objectionable features of ordinance no. 219 are removed. No case has been cited to us nor has our own research revealed any in which a legislative enactment was upheld because the objectionable features thereof had been removed by a subsequent enactment, enacted independently of the first.

Undoubtedly, the Lemoyne Borough Council could have amended ordinance no. 219 so as to eliminate the objectionable features. This is directly decided by the case of Commonwealth v. Great American Indemnity Co., 312 Pa. 183, in which Justice Simpson speaking for the court at page 194 said:

"In the case of an amendatory statute, it is a matter of indifference whether or not the original statute was or was not unconstitutional: . . . This must be so, since every word of the amended statute, including

that quoted from the original statute, is the language of the legislature which passed the amended act in those words."

In the Great American Indemnity Co. case the amendment statute included the provisions of the original act and extended them. The decision indicates that, had the second enactment merely supplemented the first without including its provisions, a different result would have been reached. Further at pages 194-95 Justice Simpson said:

"Before the amendment, the section spoke the language of the legislature of 1901; the amended statute in its entirety speaks the language of the legislature of 1903. Strike down the former and the latter remains, under the authorities quoted, 'proper as independent legislation', not merely as a graft on the mechanics' lien law."

An examination of the problem clearly indicates that this difference in result in the two situations is justified. If the legislature passed a statute applicable to Cumberland County only, the statute would be invalid because it was special legislation. If another statute were subsequently passed applying to another county of the same class it would likewise be invalid. Would such statutes become valid after similar statutes applicable to each of the counties within that class had been passed? If so upon which statute would a prosecution be based for a violation which occurred in Cumberland County? On the other hand if the first statute were amended to include all counties of the same class the answer is obvious.

Applying the same reasoning to the instant case, if the two ordinances together were held valid, which would have been violated had plaintiffs built within the 50-foot limit? Only ordinance no. 219 applies to plaintiffs by its terms, but to sustain the prosecution the second ordinance which does not apply to them

would have to be applied. It is clear that in a penal action the rule of strict construction would prohibit such consideration. For the foregoing reasons we conclude that the provisions of the second ordinance cannot be considered in the determination of the validity of ordinance no. 219. Since we have already determined ordinance no. 219 standing alone to be invalid the appeal must be sustained.

And now, October 31, 1950, the appeal is sustained and Ordinance No. 219 of the Borough of Lemoyne is declared invalid.