# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tammy R.A. Little d/b/a          :
Creature Comforts Rehabilitation Ranch,  :
              Petitioner       :
                                :
           v.             : No. 1046 C.D. 2020
                                : ARGUED: May 10, 2021
Department of Agriculture, Bureau of Dog  :
Law Enforcement,              :
              Respondent   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE MARY HANNAH LEAVITT, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

## MEMORANDUM OPINION BY
## SENIOR JUDGE LEADBETTER           FILED: August 13, 2021

Petitioner, Tammy R.A. Little, doing business as Creature Comforts Rehabilitation Ranch, seeks review of the Secretary of Agriculture's order affirming the kennel license refusal order issued by the Department of Agriculture, Bureau of Dog Law Enforcement. We reverse.

The operative facts found by the Secretary are not disputed and may be summarized as follows. Petitioner has operated a noncommercial kennel for high risk dogs in Newville, Pennsylvania, since 2013. (Secretary's Final Adjudication and Order[1] "Adjudication" at Finding of Fact "F.F." Nos. 2-3.) Petitioner, a veteran of the military, has operated her kennel on a noncommercial basis, taking in high risk dogs—Plott Hounds, pit bulls, huskies, and hunting dogs of various breeds—

---

[1] (Pet'r's Br. at Ex. A.)

from shelters in South Carolina that would otherwise euthanize the dogs. (*Id.*, F.F. Nos. 3, 4, and 9.) Petitioner keeps the dogs on her farm, 36 acres in size, which has 4 runs totaling 9,000 square feet, and in her home on that farm. (*Id.*, F.F. No. 6.) Petitioner maintains four fenced exercise yards in which she separates the dogs for behavioral matches. (*Id.*, F.F. No. 16.) Petitioner keeps 40 dogs at any given time, placing the dogs with new owners when possible but keeping them when they are not placeable, charging at most $250 for adoption but sometimes less. (*Id.*, F.F. Nos. 7-8 and 10.) Petitioner placed three dogs in 2019. (*Id.*, F.F. No. 11.) Petitioner keeps the dogs in her house at night and lets the dogs stay out all day in nice weather, taking them inside during inclement weather except to allow them to relieve themselves. (*Id.*, F.F. Nos. 18 and 22.) Although Petitioner disagrees with the need for outdoor shelters for the dogs because she shelters them in her house, she has purchased 12 shelters at $1,500 each in order to effect compliance with the law. (*Id.*, F.F. Nos. 15, 21, and 22.) Petitioner's costs for running the operation include: gas and tolls for travel and dog food, cumulatively costing $2,000 to $2,500 per year; $2,000 to $3,000 per year in veterinary bills, and more if there is surgery; and what the Secretary termed capital costs, including building pens for $2,800 and buying the aforementioned 12 shelters for $1,500 each. (*Id.*, F.F. Nos. 12-15.)[2]

In early May 2019, a North Newton Township animal control officer investigated Petitioner's property, resulting in charges for nine violations of 18 Pa.C.S. Chapter 55, Subchapter B—specifically 18 Pa.C.S. § 5532 (relating to

---

[2] The Secretary found that Petitioner's kennel has been subject to inspections by a state dog warden and the local animal control officer, with the latter filing nine summary charges each of unsanitary conditions and neglect of animals. (*Id.*, F.F. Nos. 17, 24-25, and 27.) However, while Petitioner pled guilty to nine counts of unsanitary conditions and one count of neglect of animals relating to shelter (*id.*, F.F. Nos. 26 and 28), it is the single count of neglect of animals which underlies the refusal of Petitioner's kennel license.

neglect of animals). (*Id.*, F.F. Nos. 24 and 27.) On July 10, 2019, Petitioner pled guilty to one violation of 18 Pa.C.S. § 5532, listed on the magisterial district court's docket as "neglect of animals—shelter/protection," and the other eight charges were dropped. (*Id.*, F.F. Nos. 28-29.) The only account of the facts underlying the offense was Petitioner's: that she was cited for not having outdoor shelters for the dogs in her care despite the fact that she keeps the dogs in her house at night and during inclement weather.

By order dated September 16, 2019, the Bureau refused Petitioner issuance of a 2019 kennel license under Section 211 of the Dog Law.[3] The second sentence of Section 211 provides as follows, *inter alia*:

> The secretary shall not issue a kennel license . . . to a person that has been convicted of a violation of 18 Pa.C.S. § 5511 within the last ten years.

3 P.S. § 459-211. However, as noted above, Petitioner was not convicted of 18 Pa.C.S. § 5511, which had been repealed two years earlier. By the Act of June 28, 2017, P.L. 215 (Act 10), former Section 5511 of the Crimes Code,[4] referred to in

[3] Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. § 459-211.

[4] Subsection (c) of former Section 5511 covered both "neglect" and "cruelty," providing in pertinent part as follows:

> A person commits an offense if he wantonly or cruelly illtreats, overloads, beats, otherwise abuses any animal, *or neglects any animal to which he has a duty of care*, whether belonging to himself or otherwise, or abandons any animal, or deprives any animal of necessary sustenance, drink, shelter or veterinary care, or access to clean and sanitary shelter which will protect the animal against inclement weather and preserve the animal's body heat and keep it dry.

**(Footnote continued on next page…)**

Section 211, was repealed and the subject matter of its several subsections split, with supplementation, among multiple sections of the new Chapter 55, Subchapter B of the Crimes Code, 18 Pa.C.S. §§ 5531-5561. "Cruelty" and "neglect," previously combined in Section 5511(c), were split into separate violations in the new subchapter, Sections 5532 and 5533. Section 5532, relating to neglect of animals, defines the offense in pertinent part as follows:

> A person commits an offense if the person fails to provide for the basic needs of each animal to which the person has a duty of care, whether belonging to himself or otherwise, including any of the following:
>
> . . . .
>
> (2) Access to clean and sanitary shelter and protection from the weather. The shelter must be sufficient to permit the animal to retain body heat and keep the animal dry.

18 Pa.C.S. § 5532(a)(2).[5] Section 5533(a), relating to cruelty to animals, provides that "[a] person commits an offense if the person intentionally, knowingly, or recklessly illtreats, overloads, beats, abandons, or abuses an animal." 18 Pa.C.S. § 5533(a). Both Sections 5532(b) and 5533(b) provide that unless the violation causes bodily injury or places the animal at imminent risk of serious bodily injury, the violation is a summary offense. 18 Pa.C.S. §§ 5532(b) and 5533(b). Despite this

---

18 Pa.C.S. § 5511(c) (repealed). The grading of former Section 5511(c) did not distinguish between the state of mind required for covered neglect (when the person owed a duty of care) and cruelty (to any animal), focusing instead on the species of animal and the effect of the violation: both were summary offenses unless the animal involved was a dog or cat and was seriously injured, suffered physical distress, or was placed at imminent risk of serious physical harm, in which case the offense would be a misdemeanor of the third degree. 18 Pa.C.S. § 5511(c)(2) (repealed).

[5] Of course, since she pleaded guilty, the issue of whether Petitioner should have been charged with depriving the dogs of appropriate shelter in the first place is not before us.

extensive revision to this portion of the Crimes Code, Section 211 of the Dog Law has not been amended to update the reference to the now repealed Section 5511.

Petitioner objected to the refusal of her 2019 license and a hearing was held before a hearing examiner, who issued a proposed report and order. Petitioner filed exceptions to the proposed report and the Secretary issued a final adjudication and order dated September 18, 2019, stating that the refusal order was affirmed. Petitioner seeks review of the Secretary's order. On appeal, Petitioner raises the following issues, paraphrased somewhat to reflect the substance of the arguments: first, whether the Secretary's affirming an order of denial of Petitioner's kennel license for a guilty plea to a single summary offense of neglect of animals was unconstitutional; second, whether the rule of lenity requires a different outcome; and third, whether Section 5532 of the Crimes Code is equivalent to former Section 5511 for purposes of Section 211 of the Dog Law.[6]

We find Petitioner's constitutional argument dispositive. Petitioner argues that the penalty of refusal to issue a kennel license in the circumstances presented here is unduly burdensome and patently beyond the necessities of the case. Although Petitioner captions this issue as an abuse of discretion by the Secretary, her argument makes clear that she is raising a claim that refusal of her license was a denial of due process.[7] Specifically, the statute creates a mandatory ten-year ban on

---

[6] Petitioner's statement of questions involved lists only the first two questions, which we have paraphrased. The third issue is set forth in the body of the brief.

[7] Pennsylvania Rule of Appellate Procedure 2116(a) states, in pertinent part, "[t]he statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is stated in the statement of questions involved *or is fairly suggested thereby*." Pa. R.A.P. 2116(a) (emphasis added).

5

the ability of persons to engage in their chosen occupation of operating a dog kennel whenever they have incurred a single conviction for the summary offense of non-dangerous neglect of animals. While we do not reach the facial validity of such a mandatory ban, we find it to be a violation of Petitioner's constitutional rights as applied in this case.

Article I, Section 1 of the Pennsylvania Constitution protects the right to possess property and pursue happiness. Pa. Const. art. I, § 1. This right includes the right to pursue a chosen occupation. *Ladd v. Real Est. Comm'n*, 230 A.3d 1096, 1108 (Pa. 2019); *Gambone v. Commonwealth*, 101 A.2d 634, 636-37 (Pa. 1954). That right is not absolute, and its exercise remains subject to the General Assembly's police powers, which it may exercise to preserve the public health, safety, and welfare. *Gambone*, 101 A.2d at 636. However, the General Assembly's police powers are also limited and subject to judicial review. *Id.*

A claim that a Pennsylvania statute violates substantive due process is subject to a "means-end review" where the court "weigh[s] the rights infringed upon by the law against the interest sought to be achieved by it, and also scrutinize[s] the relationship between the law (the means) and that interest (the end)." *Nixon v. Commonwealth*, 839 A.2d 277, 286-87 (Pa. 2003). An act of the General Assembly is presumed to be valid and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 16 (Pa. Cmwlth. 2012). A party challenging the constitutionality of a statute bears a very heavy burden to overcome this presumption. *Nixon*, 839 A.2d at 286.

The level of scrutiny we apply to that means-end review is dependent upon the nature of the right allegedly infringed. A right that is not fundamental, such

6

as the right to one's occupation, is subject to rational basis review. *Id.* The rational basis test under Pennsylvania law is less deferential to the legislature than its federal counterpart. *Shoul v. Dep't of Transp., Bureau of Driver Licensing*, 173 A.3d 669, 677 (Pa. 2017).

> Pennsylvania's less deferential, "more restrictive" test provides:
>
> [A] law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. The question whether any particular statutory provision is so related to the public good and so reasonable in the means it prescribes as to justify the exercise of the police power, is one for the judgment, in the first instance, of the law-making branch of the government, but its final determination is for the courts.

*Id.* [quoting *Gambone*, 101 A.2d at 636-37 (citations and footnotes omitted)]; *see also Nixon*, 839 A.2d at 289-90 (striking down as unconstitutional a statute prohibiting the employment of certain formerly convicted individuals in elderly care facilities because the prohibition was based on length of employment rather than individual rehabilitation efforts and thus lacked a real and substantial relation to the stated purpose of protecting facility residents).

The ten-year ban on issuance of a kennel license imposed by Section 211 of the Dog Law applies to those, like Petitioner, convicted of any species of "cruelty to animals" under Chapter 55, Subchapter B of the Crimes Code, including neglect under Section 5532. As pointed out by Petitioner, the punishment at issue applies regardless of whether the crime was a summary offense under Section 5532, which by definition neither caused injury nor placed any animal at imminent risk of

injury. The ban makes no distinction between the *mens rea* and *actus reus* required under the current cruelty to animals provision—"intentionally, knowingly, or recklessly illtreats, overloads, beats, abandons, or abuses an animal"—and the lesser standard for neglect of animals. It also ignores whether its application, which the Department stated at oral argument is to protect dogs, actually accomplishes that purpose. As is clear from the facts that are undisputed here, the existence of kennels like Petitioner's can serve to protect the welfare of unwanted, homeless dogs.

We are mindful that application of Section 211 in many, if not most, circumstances would clearly serve the purpose the legislature intended. However, it is clear that the application of Section 211 as applied in this case does not accomplish that intended purpose. Denying a license to a kennel that provides a shelter for numerous dogs that would otherwise be destroyed as a penalty for failing to provide outdoor shelter for dogs who are taken indoors at night and in inclement weather would clearly defeat the purpose of protecting dogs. Therefore, weighing the right infringed upon against the interest sought to be achieved, we find denial of Petitioner's license under the circumstances of this case to be an as-applied violation of due process.

On the foregoing basis, we reverse.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tammy R.A. Little d/b/a       :
Creature Comforts Rehabilitation Ranch,  :
                Petitioner    :
                          :
          v.          : No. 1046 C.D. 2020
                          :
Department of Agriculture, Bureau of Dog  :
Law Enforcement,                :
                Respondent   :

# **O R D E R**

AND NOW, this 13th day of August, 2021, the order of the Secretary of Agriculture is REVERSED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tammy R.A. Little d/b/a Creature : 
Comforts Rehabilitation Ranch, : 
                    Petitioner : 
          : 
         v. : No. 1046 C.D. 2020
          : Argued: May 10, 2021
Department of Agriculture, : 
Bureau of Dog Law Enforcement, : 
                 Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE MARY HANNAH LEAVITT, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

CONCURRING OPINION
BY JUDGE LEAVITT                           FILED: August 13, 2021

I agree with the panel's decision to reverse the adjudication of the Secretary of Agriculture (Secretary), denying the kennel license application of Tammy R.A. Little, doing business as Creature Comforts Rehabilitation Ranch (Little). I write separately to address Little's abuse of discretion argument.

Little challenged the Secretary's adjudication on due process grounds, but she also challenged the Secretary's adjudication as an abuse of discretion. Little contends that Section 211(a) of the Dog Law[1] does not mandate the refusal of a kennel license "to someone who has received anything short of a spotless kennel inspection." Little Brief at 14. Notably, Little's kennel had been licensed since 2013.

Generally, constitutional questions should be avoided where the matter can be decided on non-constitutional grounds. *Blake v. State Civil Service*

---

[1] Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. §459-211(a).

*Commission*, 166 A.3d 292, 297 (Pa. 2017). Here, the constitutional question can be avoided for two reasons. First, the Secretary had discretion to continue Little's license because the word "shall" can be directory or mandatory, depending on the context. Second, the rule of lenity requires that Section 211(a) of the Dog Law be construed against the government because its reference to the Crimes Code[2] is ambiguous.

Section 211(a) the Dog Law sets forth the standards for the issuance and revocation of kennel licenses. It states, in relevant part, as follows:

> The secretary shall not issue a kennel license, dealer license or out-of-state dealer license to a person that has been convicted of a violation of 18 Pa. C.S. §5511 within the last ten years.

3 P.S. §459-211(a). Section 5511 of the Crimes Code was repealed by the Act of June 28, 2017, P.L. 215, No. 10 (Act 10), and its provisions were substantially reenacted, with supplementation, in Chapter 55, Subchapter B of the Crimes Code, 18 Pa. C.S. §§5531-5561. The Dog Law has not been amended to update the reference to the now repealed Section 5511, entitled as "Cruelty to animals."

Our Court has explained that the word "shall" in a statute "does not require mandatory interpretation." *Earhart v. Board of Supervisors of West Cocalico Township*, 296 A.2d 284, 286 (Pa. Cmwlth. 1972).

> Except when relating to the time of doing something, statutory provisions containing the word "shall" are usually considered to be mandatory, *but it is the intention of the legislature which governs*, and this intent is to be ascertained from a consideration of the entire act, its nature, its object and the consequences that would result from construing it one way or the other.

---

[2] 18 Pa. C.S. §§101-9546.

*Id.* (quoting *Borough of Pleasant Hills v. Carroll*, 125 A.2d 466, 468 (Pa. Super. 1956)) (emphasis added).  Little argues that the legislature did not mean that her kennel could not be licensed when considering the entire Dog Law, and I agree.

This Court has stated that "the General Assembly afforded the Secretary broad discretion in administrative licensing under Section 211[.]" *Burkholder v. Department of Agriculture*, 989 A.2d 73, 76 (Pa. Cmwlth. 2010).  Consistent with the Secretary's broad discretion, the word "shall" as used in Section 211(a) of the Dog Law should be understood as directory not mandatory.  Had the legislature intended that a single summary offense renders a person ineligible for a kennel license, it would have so stated.  *See, e.g.*, 18 Pa. C.S. §9124(b)(3) ("The following information shall not be used in consideration of an application for a license, certificate, registration or permit: … (3) Convictions of a summary offense.").  Instead, the legislature committed the decision to the Secretary's discretion.

Little provides a shelter for numerous "high risk dogs" that would otherwise be euthanized.  Secretary Adjudication, 9/18/2020, at 3-4; Findings of Fact Nos. 3, 9.  Little does not provide outdoor shelter for these dogs during the day, but she takes dogs indoors at night and in inclement weather.  The loss of Little's kennel license does not advance the welfare of dogs.

Second, there is an ambiguity in Section 211(a) of the Dog Law because of its reference to Section 5511 of the Crimes Code.

> Ambiguities should and will be construed against the government.  This principle has its foundation in the rule of lenity that provides that any ambiguity in a criminal statute will be construed in favor of the defendant.  The rule of lenity requires a clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to

MHL-3

liability for penalties and what the penalties would be. Application of the rule of lenity extends beyond the context of criminal statutes.

*Harmer v. Pennsylvania Board of Probation and Parole*, 83 A.3d 293, 300 (Pa. Cmwlth. 2014) (citation omitted). "'Underpinning the rule of lenity is the fundamental principle of fairness that gives validity to our laws' by providing individuals the clear and unequivocal warning discussed above." *McGrath v. Bureau of Professional and Occupational Affairs, State Board of Nursing*, 146 A.3d 310, 316 (Pa. Cmwlth. 2016) (quoting *Sondergaard v. Department of Transportation, Bureau of Driver Licensing*, 65 A.3d 994, 997 (Pa. Cmwlth. 2012)).

The reference to a section of the Crimes Code that no longer exists clouds the meaning of Section 211(a) of the Dog Law. As a result, Section 211(a) does not provide a "clear and unequivocal warning … that people generally would understand" that the issuance of a kennel license will be refused for a summary negligence conviction under 18 Pa. C.S. §5532(a)(2). *Harmer*, 83 A.3d at 300.

In sum, the Secretary had the discretion to continue Little's kennel license because "shall" should be understood as directory not mandatory. Given that discretion, it was an abuse thereof not to continue Little's kennel license where she had a spotless record for a number of years and performs a public service. Finally, because Little had no way of knowing that the single summary offense for negligence would cause the non-issuance of her kennel license, the Secretary's adjudication violated the rule of lenity.

Accordingly, I join in the majority's order but on grounds of statutory construction, not due process.

_____
MARY HANNAH LEAVITT, President Judge Emerita

MHL-4